No. 23-55258

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JANE DOE,

*Plaintiff-Appellant*,

v.

COUNTY OF ORANGE, et al,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 8:20-cv-00322-JWH-GJS
Hon. JOHN W. HOLCOMB

**APPELLANT'S REPLY BRIEF**

JANE DOE
11151 Valley Blvd #4886,
El Monte, CA 91734
*Plaintiff-Appellant in Pro Per*

# TABLE OF CONTENTS

I. DOE DID NOT ABANDON ANY ISSUE ...................................... 3

II. DOE HAS RAISED A GENUINE ISSUE OF MATERIAL FACT . 3

III. THE DISTRICT COURT APPLIED THE WRONG STANDARD TO ACTS, OMISSIONS OR CONDITIONS CONSTITUTING PUNISHMENT FOR PRETRIAL DETAINEES ................................................................ 3

IV. THE SEARCHES VIOLATED DOE'S CONSTITUTIONAL RIGHTS 4

    A. California Penal Code § 4030 Is Applicable to Doe .............. 4

    B. Excessive Group Strip Search Is Unnecessary Or Unjustified Response to Problems of WCJ's Security ...................................... 5

V. MIDNIGHT CELL SEARCH ON AUGUST 11, 2019 VIOLATED DOE'S CONSTITUTIONAL RIGHTS UNDER FOURTH AND FIRST AMENDMENT ................................................................................. 8

    A. Fourth Amendment ............................................................... 8

    B. First Amendment .................................................................. 9

VI. UNCONSTITUTIONAL PRACTICE, CUSTOM OR POLICY .... 11

VII. WCJ's ACTS, OMISSIONS OR CONDITIONS, VIEWED IN TOTALITY, CONSTITUTE PUNISHMENT TO DOE ........................................ 14

VIII. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN RULING ON DOE'S MOTION TO COMPEL ....................... 14

CERTIFICATE OF COMPLIANCE ................................................... 17

CERTIFICATE OF SERVICE ............................................................. 18

## I. DOE DID NOT ABANDON ANY ISSUE

County contends that Doe's deposition testimony and sworn declarations were inconsistent. It is County's burden to demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It is County's burden to reference or cite to Doe's deposition testimony to demonstrate the inconsistency but County failed to do so.

## II. DOE HAS RAISED A GENUINE ISSUE OF MATERIAL FACT

County primarily contends that each of Doe's alleged violation did not rise to the level of a constitutional violation but failed to address the cumulative impacts of the alleged violations. See *Bell v. Wolfish*, 441 U.S. 520, 570 (1979) (holding that when assessing the restrictions on detainees, courts must consider the cumulative impact of restraints imposed during confinement.)

## III. THE DISTRICT COURT APPLIED THE WRONG STANDARD TO ACTS, OMISSIONS OR CONDITIONS CONSTITUTING PUNISHMENT FOR PRETRIAL DETAINEES

*Foster v. Runnels*, 554 F.3d 807 (9th Cir. 2009), *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239 (9th Cir. 2016), *Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996) and *Frost v. Agnos*, 152 F.3d 1124 (9th Cir. 1998), cited by the district court applied the more demanding Eighth Amendment deliberate-indifference standard, as opposed to the objective inquiry that should be applied here. See *Kingsley v. Hendrickson*, 576 U.S. 389, 401 (2015).

## IV. THE SEARCHES VIOLATED DOE'S CONSTITUTIONAL RIGHTS

### A. California Penal Code § 4030 Is Applicable to Doe

Penal Code §4030 shall apply only to prearraignment detainees arrested for infraction or misdemeanor offenses. See Penal Code §4030(b). All strip, visual, and physical body cavity searches shall be conducted in an area of privacy so that the search cannot be observed by persons not participating in the search. Persons are considered to be participating in the search if their official duties relative to search procedure require them to be present at the time the search is conducted. Penal Code §4030(l).

Penal Code §4030(e) provides that:

A person arrested and held in custody on a misdemeanor or infraction offense, except those involving weapons, controlled substances, or violence, or a minor detained prior to a detention hearing on the grounds that he or she is a person described in Section 300, 601, or 602 of the Welfare and Institutions Code, except for those minors alleged to have committed felonies or offenses involving weapons, controlled substances, or violence, shall not be subjected to a strip search or visual body cavity search prior to placement in the general jail population, unless a peace officer has determined there is reasonable suspicion, based on specific and articulable facts, to believe that person is concealing a weapon or contraband, and a strip search will result in the discovery of the weapon or contraband. A strip search or visual body cavity search, or both, shall not be conducted without the prior written authorization of the supervising officer on duty. The authorization shall include the specific and articulable facts and circumstances upon which the reasonable suspicion determination was made by the supervisor.

The language of Penal Code §4030(e) is unequivocal in its mandate that individuals arrested and held in custody for misdemeanor or infraction offenses, with certain exceptions, shall not be subjected to strip searches or visual body cavity searches prior to placement in the general jail population.

To interpret Penal Code §4030 in a manner that limits its application solely to pretrial detainees prior to being placed in the general jail population would not only contravene the plain language of the statute but also undermine its intended purpose. See Penal Code §4030(a)(1). Such a restrictive reading would erode the protections afforded to individuals arrested for less serious offenses and potentially expose them to unnecessary and intrusive searches without sufficient justification.

### B. Excessive Group Strip Search Is Unnecessary Or Unjustified Response to Problems of WCJ's Security

Scope and manner. Strip searches need not entail complete nudity or physical touching to implicate Fourth Amendment concerns. While the presence of same-gender staff may mitigate some privacy concerns, it does not absolve authorities from ensuring that the search is conducted in a manner consistent with constitutional standards. County failed to cite any authorizes that mandate the exposure of genitals and breasts or physical contact as prerequisites for a search to qualify as a strip search implicating the Fourth Amendment.

Doe was required to detach her period pad from her underwear and twist it in front of jail staff and other inmates. County made a conclusory assertion that the

5

manner in which the searches were conducted was reasonable without any supporting authorities.

Justification. WCJ presented low risks of violence or contraband abuse and scanner was available in 2019. County failed to address the frequency and provide any justification, especially after Doe was ordered to be released. County contends that the absence of discovered contraband may be more a testament to the effectiveness of the search technique as a deterrent. However, in evaluating the reasonableness of the scope and manner of searches conducted within correctional facilities, the absence of discovered contraband or weapons cannot serve as a reliable measurement of the constitutionality or reasonableness of those searches. Relying on such intangible and unquantified metrics to justify the scope and manner of searches risks legitimizing abusive practices and undermining fundamental constitutional protections. The reasonableness of a search must be assessed based on objective criteria. Permitting the absence of discovered items to serve as a barometer of the reasonableness of searches would create a dangerous precedent, as it would effectively grant unchecked discretion to law enforcement and correctional authorities. The notion that the absence of discovered contraband or weapons justifies the scope and manner of searches is inherently flawed and susceptible to abuse. Under such a framework, any level of intrusion or excessiveness in search practices could be rationalized based on the lack of

6

contraband or weapon found based on the effectiveness as a deterrent. This approach would effectively render the Fourth Amendment's protections meaningless, as it would allow authorities to engage in unfettered and indiscriminate searches without accountability. In sum, the absence of discovered contraband or weapons is an unreliable and inadequate basis for assessing the reasonableness of the scope and manner of searches within correctional facilities.

Place. County asserts that this Court has upheld the practice of conducting strip searches in groups. That is not true. In *Cunningham*, the Multnomah County Inverness Jail (MCIJ) is a medium security facility that houses between seven and nine hundred **sentenced inmates** in a 225,000 square foot "open dormitory" configuration. MCIJ limited its search to a visual inspection of the kitchen crew. *Cunningham v. Multnomah County*, 737 Fed. Appx. 814, 814-818 (9th Cir. 2018). Doe was not a sentenced inmate in a medium security facility in "open dorm." Therefore, County's reliance on *Cunningham* is misplaced.

County's attempt to justify strip searches conducted in groups in open hallways on the basis of overcrowding represents an impermissible endeavor to rationalize one constitutional violation by invoking another. The existence of unconstitutional overcrowding does not serve as a justification for strip searches conducted in groups in open hallways. Constitutional violations cannot be rationalized or justified by invoking other constitutional violations.

V.  **MIDNIGHT CELL SEARCH ON AUGUST 11, 2019 VIOLATED DOE'S CONSTITUTIONAL RIGHTS UNDER FOURTH AND FIRST AMENDMENT**

**A. Fourth Amendment**

County's contention that the decision in *Hudson v. Palmer* absolves correctional authorities from the need to consider whether a search is motivated by retaliation or harassment is a misinterpretation of the case law.

In *Hudson*, the Supreme Court held that the Fourth Amendment's prohibition on unreasonable searches does not apply to searches of prison cells because prisoners do not have a legitimate expectation of privacy in their cells. However, the Court did not address the issue of whether searches conducted for retaliatory or harassing purposes are per se reasonable under the Fourth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Instead, the Court narrowly focused on the question of whether prisoners have a legitimate expectation of privacy in their cells, which it answered in the negative. *Id*. at 517

County's attempt to equate the legitimacy of the FAST search policy with the validity of each individual FAST search is fundamentally flawed and undermines essential principles of constitutional scrutiny within correctional settings.

While it is acknowledged that the objective of the FAST search policy may be reasonably related to legitimate penological goals, such as ensuring institutional

safety and security, it does not follow that all FAST searches, regardless of their specific circumstances, are ipso facto legitimate. Such an assertion disregards the necessity for individualized assessments of the reasonableness and proportionality of each search conducted under the policy.

The legality of a search, including those conducted pursuant to a policy like FAST, must be evaluated on a case-by-case basis, considering factors such as the timing, location, manner, and purpose of the search. The Supreme Court has repeatedly emphasized the importance of tailoring searches to the specific exigencies and risks present in each situation, rather than adopting a blanket approach that fails to account for variations in circumstances. See *Terry v. Ohio*, 392 U.S. 1, 17-18, n. 15 (1968).

County's suggestion that all FAST searches are inherently legitimate, regardless of how, when, and where they occur, raises serious concerns about potential abuses of authority and violations of constitutional rights. Each search must be assessed independently to determine its compliance with constitutional standards, and blanket assertions of legitimacy without regard to specific circumstances undermine the protections afforded by the Fourth Amendment.

**B. First Amendment**

An inference that the FAST search on August 11 might have simply been a

"make up search"[1] after only one such search was performed the preceding day does not, in and of itself, demonstrate the absence of a triable issue of material fact. Instead, Doe's evidence, which contradicts the notion that the midnight search was a make-up, must be accepted as true for the purposes of summary judgment analysis. In fact, make-up search is not a standard practice in WCJ. See AOB at 39.

As required at the summary judgment stage, the court must view the evidence in the light most favorable to Doe and draw all reasonable inferences in Doe's favor. This includes rejecting County's inference that the August 11 midnight search was a make-up search.

While maintaining order and discipline within the prison environment is a legitimate correctional goal, conducting a search in the middle of the night as a response to daytime noise levels is disproportionate and punitive, rather than serving a legitimate correctional purpose.

Doe need not prove that the threatened consequences, i.e., more nighttime FAST searches, actually occurred to demonstrate retaliation and harassment. The mere threat of repeated nighttime searches, coupled with the adverse action taken against Doe, is sufficient to establish a claim of retaliation under *Rhodes*. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Notably, County failed to address any of the elements under *Rhodes*.

---

[1] The make-up search theory was not raised by defendants in their moving paper of motion for summary judgment.

County provides no legal authority to support the proposition that retaliation or harassment claims must be based on individual targeting. The law recognizes that retaliation and harassment can manifest in various forms, including actions directed towards a group or collective of individuals who engage in protected conduct. The absence of individual targeting does not negate the possibility of retaliation or harassment occurring within a broader context.

County's argument overlooks the reality of the prison environment, where collective punishment or retaliatory measures against a group of inmates for the actions of one or a few individuals are common. In such instances, the adverse action taken against the entire module can constitute retaliation or harassment if it is motivated by the protected conduct of specific individuals within the group.

County's assertion that Doe was not individually singled out or targeted ignores the broader context in which the search occurred. Even if the search was conducted on the entire module, if it can be demonstrated that Doe was among the individuals being targeted for retaliation or harassment due to her protected conduct, then Doe's retaliation claim remains viable.

County's contention that the search conducted on the entire module undermines Doe's retaliation claim is legally unfounded and warrants rejection.

## VI. UNCONSTITUTIONAL PRACTICE, CUSTOM OR POLICY

As stated above, Penal Code §4030 applies to Doe who was a

prearraignment detainee arrested for misdemeanor offenses.

Requiring inmates to shower upon entry is related to a genuine penological interest. However, this interest does not justify subjecting inmates to involuntary nudity in a manner that does not advance the stated goal. County attempts to downplay the constitutional violation by arguing that Doe was required to be nude briefly in the presence of female deputies and other inmates in connection with the shower.

County's suggestion that Doe must be nude for a substantial amount of time to invoke constitutional protection is misguided and unsupported by legal authority. The mere fact that Doe was required to be nude, even briefly, in the presence of others, without a legitimate penological justification, constituted a violation of Doe's constitutional rights.

There is no dispute that the shower area itself was obscured by a translucent shower curtain and Doe was able to be observed the entire time she was in the shower.

County contends that Doe's uses of language like overcrowding "may" and "could" have an impact on various aspects of the inmates' experience suggests that even Doe herself has no actual evidence that the overcrowding at WCJ was actually an issue. However, Doe's argument is supported by the findings of BSCC inspections, which demonstrate that overcrowding was evident in all facilities,

12

including WCJ. AOB at 15. These inspections provide objective evidence of the overcrowding issue and support Doe's contention regarding its impact on various aspects of the inmates' experience.

Doe's own declaration, which must be taken as true and in Doe's favor, claiming the jail was "bone-chillingly" cold, has raised a genuine dispute. A pulse drop, which must be taken as true and in Doe's favor, demonstrates a substantial risk of harm due to the temperature conditions in the WCJ.

The constitutionality of the policies related to "recreation" were put into issue by Doe in her Fourth Amended Complaint ("FAC"). See SER-1439, 1443.

The fact that the light over Doe's bed remained at the same wattage continuously for 24 hours supports that the light was not low-wattage. While the Ninth Circuit has not explicitly held that prisoners have a right to sleep in complete darkness, the absence of such a holding does not equate to a blanket authorization of 24-hour lighting in correctional facilities. Intense illumination presents a substantial risk of serious psychological harm to those exposed to it over an extended period.

County's contention that an initial travel-size Welfare Pack, including basic hygiene items such as a comb, toothbrush, toothpaste, and soap, was provided to Doe overlooks the fundamental issue of ongoing access to essential hygiene products throughout Doe's incarceration at WCJ. While County argues that the

initial provision of these items was sufficient, it fails to address the fact that Doe was subsequently required to purchase additional hygiene products from WCJ, despite their obligation to provide them.

## VII. WCJ's ACTS, OMISSIONS OR CONDITIONS, VIEWED IN TOTALITY, CONSTITUTE PUNISHMENT TO DOE

The effect of incarceration itself is inherently punitive, and additional restraints imposed incident to that restraint compound the punitive nature of confinement. County's attempt to argue that Doe was not subjected to punishment by addressing each alleged violation separately fails to acknowledge the cumulative impact of multiple restraints incident to incarceration.

Here, the alleged violations, when viewed in isolation, may appear not serious enough. However, when considered together, the cumulative impact went beyond mere punishment and rose to the level of unconstitutional treatment.

## VIII. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN RULING ON DOE'S MOTION TO COMPEL

Doe is entitled to the contact information of all persons who overlapped in custody with her, irrespective of their current custodial status. The fact that these individuals were no longer in custody does not diminish Doe's entitlement to their contact information as potential witnesses in her case. The relevance of witness contact information to Doe's case is not contingent upon the current custodial status of the individuals involved.

Moreover, the district court's ruling on Doe's motion to compel witness contact information should not be influenced by whether Doe requested additional time to contact these individuals, take their depositions, or obtain declarations. While Doe cannot make direct contact with persons in custody, requiring additional time is futile. Doe's entitlement to witness contact information is a separate and distinct issue from her procedural requests for additional time or other discovery measures.

Any privacy interest is outweighed by Doe's need to resolve the case. In addition, any disclosure of contact and identifying information is protected by a protective order entered in the case. SER-1512.

The importance of ensuring that Doe has access to potential witnesses who have relevant information outweighs any privacy interests that may be implicated by disclosure of contact information.

None of the cases cited by the County supports its position. *Tuffly v. U.S. Dep't of Homeland Sec.*, 870 F.3d 1086 (9th Cir. 2017) and *Associated Press v. U.S. Dept*, 554 F.3d 274 (2d Cir. 2009) involves FOIA's personal privacy exemptions. *County of Los Angeles v. Los Angeles County Employee Relations Com.*, 56 Cal.4th 905, 157 Cal.Rptr.3d 481, 301 P.3d 1102 (2013) involves the balance between an employee's right of informational privacy and a union's right

to obtain information it needs to represent the employee in collective bargaining. None of these cases involve contact information of third party witnesses.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court reverse the District Court's dismissal of Appellant's claims against Appellees and remand for further proceedings, or, in the alternative, reverse the District Court's order denying leave to amend.

Date: March 11, 2024

/s / *JANE DOE*
Plaintiff-Appellant in Pro Per

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type-volume and style requirements of FRAP 32(a)(6) because it has been prepared using a proportionally spaced typeface, 14-point Times New Roman, in Microsoft Word 2010 and contains 2,998 words, including footnotes and headings but not including the caption and tables, according to the word count provided by Microsoft Word.

Dated: March 11, 2024　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　/s / _JANE DOE_
　　　　　　　　　　　　　　　　　　Plaintiff-Appellant in Pro Per

## CERTIFICATE OF SERVICE

I certify that on March 11, 2024, I filed the foregoing Appellant's Opening Brief with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit. I certify that the participants in this case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system. Non-participants will be served by U.S. mail.

Dated: March 11, 2024                Respectfully submitted,

                                            /s / *JANE DOE*
                                            Plaintiff-Appellant in Pro Per